UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------X
DAVID GOLDSTEIN,

                         Plaintiff

                                        Docket No.

           -against-


COUNTY OF SUFFOLK, SUFFOLK COUNTY EXECUTIVE
STEVEN BELLONE, in his official capacity only.
SUFFOLK COUNTY POLICE COMMISSIONER RODNEY K.
HARRISON, in his official capacity only, SUFFOLK
COUNTY COMMANDING OFFICER OF THE PISTOL LICENSING
BUREAU LIEUTENANT MICHAEL KOMOROWSKI, in his
official capacity only, SUFFOLK COUNTY POLICE
OFFICER CIARA PLIHCIK, in her individual and
official capacity, SUFFOLK COUNTY POLICE
OFFICER/PISTOL LICENSING BUREAU POLICE OFFICER
DANIEL JUGAN, in his individual and official
capacity, JOHN AND JANE DOE NO. 1-10, in their
official and in their individual capacity.

                        Defendants.
---------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR PRELIMINARY RELIEF**


      For the reasons set forth in the attached Memorandum of Law,
plaintiff respectfully prays that this Honorable Court issue an
Order mandating that the Suffolk County Police Department reinstate
the pistol license of the plaintiff; mandating that the Suffolk
County Police Department Pistol License Section be ordered to
return to the plaintiff all his firearms seized by the Suffolk
County Police Department; and further instruct that defendants
preserve and turn over records to plaintiff supporting its
unconstitutional pattern and practice of violating the
constitutional rights of plaintiff and others similarly situated;
preliminarily appoint a federal monitor, together with all other
relief that this Honorable Court deems just and appropriate

ii

Dated: Central Islip, New York
        January 4, 2023

Richard W. Young, Sr., Esq. (RWY 7633)
Attorney for Plaintiff
863 Islip Avenue
Central Islip, N.Y. 11722
(631) 224-7500

Cory H. Morris, Esq. (CM5225)
*Cocounsel for David Goldstein*
135 Pinelawn Road, Suite 250s
Melville NY 11747
(631) 450-2515

iii

## TABLE OF CONTENTS

Table of Cases ................................................................................................. i

Introduction and Preliminary Statement ................................................... 1

The Standard of Review .................................................................................. 4

Equitable relief ................................................................................................ 4

Legal Argument

I.   Defendants, individually and collectively, violated plaintiff's Second
     Amendment rights evidenced by a policy .......................................... 6

II.  Plaintiff is entitled to immediate equitable relief in the return of his property,
     firearms, and ability to carry a firearm consistent the united states constitution
     .............................................................................................................. 11

Conclusion ...................................................................................................... 14

i

# TABLE OF CASES

## CASES

*Abrams v. United States*, 250 U.S. 616, 630-631, 40 S. Ct. 17, 63 L. Ed. 1173 (1919) ..............................................................................................................3

*Amoco Production Co.* v. *Gambell*, 480 U.S. 531, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987) ......................................................................................................6, 11

*Back v. Hastings On Hudson Union Free Sch. Dist.,* 365 F.3d 107, 122 (2d Cir. 2004) ..............................................................................................................4

*Bell v Burson*, 402 U.S. 535, 539 (1971) ........................................................9

*Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) ..............9

*Board of Regents v. Roth*, 408 U. S. 564 (1972) ...............................................10

*Caulfield* v. *Board of Education,* 583 F.2d 605 (2d Cir. 1978) ..........................4

*District of Columbia v. Heller*, 554 U.S. 570, 581 (2008) ...............................13

*Evans v. City of New York*, 308 F. Supp. 2d 316, 323 (S.D.N.Y. 2004) ...............9

*Foundry Services, Inc.* v. *Beneflux Corp.,* 206 F.2d 214 (2d Cir. 1948 ...............4

*Gary Plastic Packaging Corp.* v. *Merrill Lynch, Pierce, Fenner & Smith*, 756 F.2d 230, 236–37 (2d Cir.1985) ......................................................................1

*Granny Goose Foods, Inc.* v. *Teamsters*, 415 U.S. 423, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974) ..............................................................................................12

*GW v. CN*, 2022 N.Y. Slip Op 22392 (Monroe Sup. Ct. 2022) ............................3

*Hague v. Sedita*, 56 Misc.2d 203, 288 N.Y.S.2d 212 ........................................9

*Herman & MacLean v. Huddleston,* 459 U.S. 375, 389 (1983) ............................9

*Irby Construction Company v. United States,* 290 F.2d 824 (Ct. Cl. 1961) ...........3

*Lewis v. Cuomo*, No. 20-CV-6316 CJS (W.D.N.Y. Dec. 16, 2021) ......................4

*Los Angeles* v. *Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) .......................................................................................12

*Mathews v. Eldridge,* 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) .........10

*Matter of Gulotta v. Kelly*, 8 Misc.2d 721, 168 N.Y.S.2d 60 (1957) ..................9

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) .......................................7, 8

*Munaf* v. *Geren*, 553 U.S. 674, 128 S.Ct. 2207, 171 L.Ed.2d 1 (2008) ...........5, 11

*Nat'l Rifle Ass'n of Am. v. Hochul,* No. 20-3187-CV, 2021 WL 5313713, at *1 (2d Cir. Nov. 16, 2021) ................................................................................ 4

*New York State Rifle & Pistol Association Inc. v. Bruen,* 142 S.Ct. 2111 (2022) .. 6, 7, 8, 10, 13, 14

*New York State Rifle & Pistol Association, Inc. v. City of New York,* No. 18-280 (U.S. Apr. 27, 2020) ............................................................................ 8, 15

*New York v. Nuclear Regulatory Commission,* 550 F.2d 745, 750, 755 (2d Cir. 1977) .......................................................... 4

*O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) ................................................................... 12

*People v. Rodriguez,* 2022 N.Y. Slip Op 22217 (NYC Sup. Ct. 2022) ................ 10

*Perry v. Sindermann,* 408 U. S. 593, 601 (1972) .............................................. 10

*Railroad Comm'n of Tex. v. Pullman Co.,* 312 U.S. 496 (1941) ........................ 12

*Schenk v. ProChoice Network of W. N.Y.,* 519 U.S. 357, 372 (1997) .................... 9

*Silvester v. Becerra,* 138 S. Ct. 945, 952 (2018) ................................................ 8

*Studebaker Corp. v. Gittlin,* 360 F.2d 692 (2d Cir. 1966) .................................. 4

*Triebwasser & Katz v. American Telephone & Telegraph Co.,* 535 F.2d 1356, 1358–59 (2d Cir. 1976) ................................................... 4

United States v. Hampton, No. CR 21-0306 JB (D.N.M. Sept. 2, 2022) ........... 5, 6

*United States v. Virginia,* 518 U.S. 515, 533, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996) ........................................................................................ 15

*Weinberger v. Romero–Barcelo,* 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982) .................................................................... 6, 11

*Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7 (2008) ........................ 5, 11

## STATUTES

42 U.S.C. § 1983 ........................................................................................... 3

## OTHER AUTHORITIES

1 Sir William Blackstone, Commentaries on The Laws Of England 144 (1753) .... 7

U.S. Const. amend. II ................................................................ 2, 6, 7, 10

1

**INTRODUCTION AND PRELIMINARY STATEMENT**

The plaintiff, DAVID GOLDSTEIN ("Plaintiff" or "Plaintiffs"), a retired law enforcement officer without any history of discipline, arrest or mental illness, brings this action seeking the immediate return of his firearms and reinstatement of his firearm license from defendants, COUNTY OF SUFFOLK ("Suffolk"), SUFFOLK COUNTY EXECUTIVE STEVEN BELLONE ("Bellone"), SUFFOLK COUNTY POLICE COMMISSIONER RODNEY K. HARRISON ("Harrison"), SUFFOLK COUNTY COMMANDING OFFICER OF THE PISTOL LICENSING BUREAU LIEUTENANT MICHAEL KOMOROWSKI, ("Komorowski"), SUFFOLK COUNTY POLICE OFFICER CIARA PLIHCIK ("Plihcik"), SUFFOLK COUNTY POLICE OFFICER/PISTOL LICENSING BUREAU POLICE OFFICER DANIEL JUGAN ("Jugan") and JOHN AND JANE DOE NO. 1-10 (collectively referred to herein as "Defendants") from continuing to maintain an illegal policy of disarming citizens and violating the Second Amendment under the guise of living with someone who is or may be suffering from a mental illness.

Accordingly, plaintiff submits that this Honorable Court should immediately

  1. Issuing an order to the Suffolk County Police Department reinstating the pistol license of the plaintiff DAVID GOLDSTEIN;

  2. Issuing an order that the Suffolk County Police Department Pistol License Section be ordered to return to the plaintiff all his firearms seized by the Suffolk County Police Department; and further

  3. Issuing an order that the defendant SUFFOLK COUNTY and the SUFFOLK COUNTY POLICE DEPARTMENT turn over all written policies regarding suspension of pistol licenses, all documents related to this case including notes, memoranda, text messages, e-mails, interoffice instant messages, letters, investigative notes in "native format"; and further relief as to this court may seem just and proper.

2

Plaintiff is a former Suffolk County Police Officer (see David Goldstein Aff. ¶¶ 25-32; Ver.

Comp. ¶¶ 23-25) who is also married to a former Suffolk County Police Officer. He is not a gun

enthusiast and requires a firearm to protect himself and his family. See David Goldstein Aff. ¶¶

33-38. Defendants, individually and collectively, did take (see Exhibit "1") plaintiff's weapons

only to return the weapons (Exhibit "2") and refuse the return of such weapons (Exhibit "3"),

even after counsel requested the return of weapons. See Exhibit "4". Plaintiff is a law-abiding

citizen who has done nothing to justify the refusal to return his firearms, his property, and refusal

to reissue a firearms license. Defendants refuse to return plaintiff's firearms or provide any legal

process for the return of plaintiff's firearms. Plaintiff has no other remedy at law.

Plaintiff submits that defendants maintain an unconstitutional policy regarding the seizure of

firearms and firearm license suspension contrary to the Second Amendment to the United States

Constitution. This Suffolk County wide policy served to injure plaintiff insofar as plaintiff is

being denied both the return of his firearms and his ability to legally carry a firearm.

In ***District of Columbia v. Heller***, 554 U.S. 570 (2008), the United States Supreme Court held

that the Second Amendment right to keep and bear arms is a right held by private American

citizens, including in one's home. In dicta, however, the ***Heller*** Court noted that its opinion

"should not be taken" to cast doubt on laws "forbidding the carrying of firearms in sensitive

places such as schools and government buildings." *Id.* at 626. The Supreme Court reiterated that

view two years later in ***McDonald v. City of Chicago***, 561 U.S. 742, 786 (2010) ("We made it

clear in ***Heller*** that our holding did not cast doubt on such longstanding regulatory measures as

... laws forbidding the carrying of firearms in sensitive places such as schools and government

buildings"; also holding that the scope of the private right to bear arms for self-defense applies to

States and cities). In ***Caetano v. Massachusetts***, 577 U.S. 411, 416 (2016), the court reaffirmed

3

its holding in *__Heller__*, and clarified that the Second Amendment extends "to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding ..." and that the Second Amendment right "is fully applicable to the states."

On June 23, 2022, the Supreme Court held that N.Y. Penal Law § 400.00(2)(f), which conditioned the issuance in New York State of an unrestricted license to carry a handgun in public on the existence of "proper cause," violated the Second and Fourteenth Amendments by impermissibly granting a licensing official the discretion to deny a license to a law-abiding, responsible citizens absent a showing of a special, heightened, need for self-protection distinguishable from that of the general community. *__New York State Rifle & Pistol Association Inc. v. Bruen__*, 142 S.Ct. 2111 (2022).

Plaintiff, David Goldstein, brings this action under the U.S. Constitution, the New York State Constitution, and 42 U.S.C. §1983 to address defendants' unconstitutional policy that, upon information and belief, may be informed by other unconstitutional practices of the state. See, e.g., *__GW v. CN__*, 2022 N.Y. Slip Op 22392 (Monroe Sup. Ct. 2022). It is a policy decision made by defendants, Suffolk County Law Enforcement, that is unique that injures plaintiff in his inability to retrieve his property, firearms, and to legally carry a firearm.

We are not passive actors in this democratic "experiment," *__Abrams v. United States__*, 250 U.S. 616, 630-631, 40 S. Ct. 17, 63 L. Ed. 1173 (1919) (J. Holmes, dissenting), and we recognize that "eternal vigilance is the price of liberty," *Irby Construction Company v. United States*, 290 F.2d 824 (Ct. Cl. 1961), After nearly four (4) decades of serving, honorably, as a law enforcement officer within the County of Suffolk, plaintiff is forced to seek this relief that should issue in the absence of some credible explanation why plaintiff should be subjected to a

4

collective punishment and be deprived of his New York State and United States Constitutional rights.

## THE STANDARD OF REVIEW
### EQUITABLE RELIEF

The standard in the Second Circuit for injunctive relief, to enjoin Penal Law §265.01-e(2)(c), calls for a showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *See **Caulfield v. Board of Education**,* 583 F.2d 605, 610 (2d Cir. 1978); see also ***New York* v. *Nuclear Regulatory Commission**,* 550 F.2d 745, 750, 755 (2d Cir. 1977); ***Triebwasser & Katz* v. *Am. Telephone & Telegraph Co.**,* 535 F.2d 1356, 1358–59 (2d Cir. 1976).

***New York* v. *Nuclear Regulatory Commission**,* 550 F.2d 745, 750, 755 (2d Cir. 1977) merely required the probability of imminent harm and irreparable injury means injury for which a monetary award cannot be adequate compensation. ***Studebaker Corp.* v. *Gittlin**,* 360 F.2d 692, 698 (2d Cir. 1966); ***Foundry Services, Inc.* v. *Beneflux Corp.**,* 206 F.2d 214, 216 (2d Cir. 1948).

"In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a 'person' acting 'under the color of state law,' and (b) that the defendant caused the plaintiff to be deprived of a federal right." ***Back v. Hastings On Hudson Union Free Sch. Dist.**,* 365 F.3d 107, 122 (2d Cir. 2004). In this regard, plaintiff does not seek monetary relief against defendants for this motion, see, e.g., ***Lewis v. Cuomo**,* No. 20-CV-6316 CJS (W.D.N.Y. Dec. 16, 2021), but rather seeks to enjoin enforcement of this unconstitutional policy depriving plaintiff of property, firearms, and a license to carry a firearm that is likely to cause imminent

harm in the foreseeable should such relief not issue. Cf. *Nat'l Rifle Ass'n of Am. v. Hochul*, No.
20-3187-CV, 2021 WL 5313713, at *1 (2d Cir. Nov. 16, 2021).

Various courts throughout the United States have recognized that "[i]n *New York State Rifle
& Pistol Association v. Bruen*, the Supreme Court concludes that the 'Second and Fourteenth
Amendments protect an individuals' right to carry a handgun for self-defense outside the home.'"
*United States v. Hampton*, No. CR 21-0306 JB (D.N.M. Sept. 2, 2022) (citing *Bruen*, 142 S. Ct.
at 2111). Successive challenges are being lodged against the latest set of New York laws
restricting New Yorker's Second Amendment rights while this matter is unique insofar as
plaintiff had a legal right to carry a firearm (federally as well, see Ver. Comp. ¶¶ 31-33), a legal
right to possess firearms and engage in self-defense if necessary but that defendants, individually
and collectively, maintain and enforce a policy of disarming lawful citizens and refusing to
return firearms without due process of law.

A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the
merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the
balance of equities tips in his favor, and that an injunction is in the public interest. See *Munaf v.
Geren*, 553 U.S. 674, 689–690, 128 S.Ct. 2207, 2218–2219, 171 L.Ed.2d 1 (2008); *Winter v.
Natural Res. Def. Council, Inc.*, 555 U.S. 7, 77 USLW 4001 (2008). Plaintiff demonstrates not
only a probability of success but the type of irreparable injury that enjoins the constitutional use
of a weapon, weapon licensed or creates a felon out of a law abiding citizen.

Plaintiff sets forth all factual circumstances in detailed affidavit and submits to this
Honorable Court that the basis of suit must be determined, giving the defendants an opportunity
to be heard, on an expedited basis lest the plaintiff suffer irreparable injury in the wake of
exponential increases in violence, crimes, and physical attacks on, *inter alia,* law enforcement

and former law enforcement in New York. *Amoco Production Co.* **v.** *Gambell*, 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987), *Weinberger* **v.** *Romero–Barcelo*, 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982).

## I.  DEFENDANTS, INDIVIDUALLY AND COLLECTIVELY, VIOLATED PLAINTIFF'S SECOND AMENDMENT RIGHTS EVIDENCED BY A POLICY

Plaintiff has the legal right to bear arms. U.S. Const. amend II. Plaintiff was a former law enforcement officer. Ver. Comp. ¶¶ 31-35. No circumstance or finding has been made against plaintiff, see Exhibit "3" and Exhibit "4", that would justify to disarm plaintiff or continue to disarm plaintiff consistent with the United States Constitution and his ability to engage in self-defense. See *United States v. Hampton*, No. CR 21-0306 JB (D.N.M. Sept. 2, 2022) (citing *Bruen*, 142 S. Ct. at 2111).

Plaintiff was disarmed by defendants, is injured by his inability to carry a firearm and submits that imminent harm may befall him, his family and others should he continue to suffer these constitutional violations and be prevented from defending himself or others. Plaintiff submits that COUNTY OF SUFFOLK maintains an unconstitutional policy enforced by SUFFOLK COUNTY EXECUTIVE STEVEN BELLONE and SUFFOLK COUNTY POLICE COMMISSIONER RODNEY K. HARRISON ("Harrison") for which SUFFOLK COUNTY COMMANDING OFFICER OF THE PISTOL LICENSING BUREAU LIEUTENANT MICHAEL KOMOROWSKI, SUFFOLK COUNTY POLICE OFFICER CIARA PLIHCIK, SUFFOLK COUNTY POLICE OFFICER/PISTOL LICENSING BUREAU POLICE OFFICER DANIEL JUGAN ("Jugan") and JOHN AND JANE DOE NO. 1-10 enforce such unconstitutional policy that continue to deprive Plaintiff of firearms in violation of his constitutional rights.

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.  The Second and Fourteenth Amendments create a right that "is exercised individually and belongs to all Americans." *District of Columbia v. Heller*, 554 U.S. 570, 581 (2008). Law enforcement agents cannot be subject to the whim and caprice of an officer interpreting religious observance under Penal Law § 265.01-e(2)(c).

This Second Amendment standard accords with how we protect other constitutional rights, like the freedom of speech in the First Amendment, to which *Heller* repeatedly compared the right to keep and bear arms. *New York State Rifle & Pistol Association Inc. v. Bruen,* 142 S.Ct. 2111 (2022) (citing *Heller,* 554 U. S., at 582, 595, 606, 618, 634-635).

Plaintiff is a retired law enforcement officer entitled to keep firearms, property, for which he cannot be summarily deprived of without due process of law. Together with this property right, this "natural right of resistance and self preservation," 1 Sir William Blackstone, Commentaries on The Laws Of England 144 (1753), has been described as the "first law of nature" and "the true palladium of liberty." St. George Tucker, *View of The Constitution of The United States with Selected Writings* 238 (Clyde N. Wilson ed. 1999). Defendants cannot justify a policy of collective punishment nevertheless the taking of firearms in light of previous and recent United States Supreme Court legal precedent.

In ***District of Columbia v. Heller***, 554 U.S. 570 (2008), the court held that the Second Amendment right to keep and bear arms is a right held by private American citizens. *Id.* at 595. In ***McDonald v. City of Chicago***, 561 U.S. 742 (2010) ("***McDonald***"), the Court held that the scope of that right applies to States and their political subdivisions, *id.* at 750, and that the

contours of the right against the states are coextensive and coterminous with the contours a

citizen can assert against the federal government, *id.* at 778–80. While limitations and reasonable

restrictions are recognized, see, e.g., *New York State Rifle & Pistol Association, Inc. v. City of*

*New York*, No. 18-280 (U.S. Apr. 27, 2020), the right is recognized, protected and is violated

when someone merely is associated to someone who may be unqualified or disqualified to

possess a firearm.

Even prior to the Supreme Court precedent in *Bruen*, the Supreme Court of the United

States in *McDonald* described the Second Amendment as a "'pre-existing right.'" *Id.* at 915.

*Heller* too rejected the idea that the right "'is ... in any manner dependent on [the Bill of Rights]

for its existence.'" *Heller* at 592.   In *McDonald v. City of Chicago*, four justices adopted the

textual view that the Second Amendment applied to the states on the theory that it was

incorporated into the Due Process Clause of the Fourteenth Amendment. However, Justice

Thomas' concurrence presented a textualist position — that the Second Amendment is among

the privileges or immunities guaranteed to Citizens against deprivation by states in the

Fourteenth Amendment. See *McDonald* at 806 (Thomas, J., concurring).

The Second Amendment is not "subject to an entirely different body of rules than the

other Bill of Rights guarantees that we have held to be incorporated into the Due Process Clause"

*McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010). Justice Thomas has observed that

"[t]he right to keep and bear arms is apparently this Court's constitutional orphan. And the lower

courts seem to have gotten the message." *Silvester v. Becerra*, 138 S. Ct. 945, 952 (2018)

(Thomas, J., dissenting). Justice Thomas has charged that "the lower courts are resisting this

Court's decisions in Heller and McDonald and are failing to protect the Second Amendment...."

*Id.* at 950.

Even before *Bruen*, the evisceration of the right to carry by the association to someone who may be unqualified to carry a firearm would be a Second Amendment violation. The Supreme Court has stated, "We have required proof by clear and convincing evidence where particularly important individual interests or rights are at stake," *Herman & MacLean v. Huddleston*, 459 U.S. 375, 389 (1983) and while "ensuring public safety and order" meets the intermediate-scrutiny standard, *Schenk v. ProChoice Network of W. N.Y.*, 519 U.S. 357, 372 (1997), one cannot help but see the obvious problem when the ability to carry a weapon is removed from, for example, plaintiff Goldstein, in carrying a firearm as contemplated by federal law (see Ver. Comp. ¶¶ 31-45) to defend himself or others would thus subject him to arrest, booking, detainment, search, seizure, ridicule, harm and prosecution.

Defendants' policy is inherently unconstitutional and deprives persons of property, government-issued license, and the exercise of a constitutional right without due process.

These defendants cannot deprive plaintiff of his rights, his firearm license, without due process, even if temporary. *Hague v. Sedita*, 56 Misc.2d 203, 288 N.Y.S.2d 212 (citing *Matter of Gulotta v. Kelly*, 8 Misc.2d 721, 168 N.Y.S.2d 60 (1957)). Plaintiff Goldstein, for example, should not lose his license because he lives with someone who may be disqualified from carrying a firearm. *Bell v Burson*, 402 U.S. 535, 539 (1971); see *Evans v. City of New York*, 308 F. Supp. 2d 316, 323 (S.D.N.Y. 2004) (once granted, a license is a protected property interest, and the Due Process Clause thus applies to the deprivation of a driver's license by the State.") (citing *Bell v. Burson*, 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) ("Suspension of issued licenses ... involves state action that adjudicates important interests of the licensees...the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment.").

10

Plaintiff must be afforded some modicum of due process prior to the removal of the protection(s) afforded by his license lest he be subject to a felony arrest. ***Mathews v. Eldridge***, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976); ***Perry v. Sindermann***, 408 U. S. 593, 601 (1972); see ***Board of Regents v. Roth***, 408 U. S. 564 (1972); ***Bell v. Burson***, 402 U. S. 535, 539 (1971); ***Goldberg v. Kelly***, 397 U. S. 254 (1970). Irrespective of the protections afforded by the Second Amendment to the United States, plaintiff still had property rights that are blatantly infringed by defendants' refusal to turn over the firearms to plaintiff or a licensed dealer for sale.

In ***New York State Rifle & Pistol Association Inc. v. Bruen***, 142 S.Ct. 2111 (2022), the U.S. Supreme held that the "proper cause" standard "prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *Id. at.* 2156; *see also id.* at 2162 (Kavanaugh, J., concurring) ("As the Court explains, New York's outlier may-issue regime is constitutionally problematic because it grants open-ended discretion to licensing officials and authorizes licenses only for those applicants who can show some special need apart from self-defense"). New York Courts recognized that the former "New York statute impermissibly infringed upon that constitutional guarantee because, unlike 43 other states, it required a showing of particularized need in order to obtain such a license, rendering the exercise of the right by ordinary citizens a near-impossibility." ***People v. Rodriguez***, 2022 N.Y. Slip Op 22217 (NYC Sup. Ct. 2022). There is no guilt by association. Plaintiff has not done anything to justify the continued seizure of his weapons nevertheless the punishment placed upon him for his wife's health.

Plaintiff is being irreparably harmed by defendants' denial of his rights and plaintiff will continue to be irreparably harmed unless and until defendants are enjoined from enforcing this

unconstitutional policy that serves to disarm citizens without due process of law, that takes their property without compensation and that eviscerates the ability to engage in self-defense.

## II.   PLAINTIFF IS ENTITLED TO IMMEDIATE EQUITABLE RELIEF IN THE RETURN OF HIS PROPERTY, FIREARMS, AND ABILITY TO CARRY A FIREARM CONSISTENT WITH THE UNITED STATES CONSTITUTION

Plaintiff shows a likelihood of success on the merits and articulates known harms, recognized in the issuance of a federal firearm carry license, that is likely to occur in the absence of preliminary relief - the balance of equities tips in plaintiff's favor and this injunction is in the public interest as demonstrated by defendants' stated purpose for these laws: safety. See ***Munaf v. Geren***, 553 U.S. 674, 689–690, 128 S.Ct. 2207, 2218–2219, 171 L.Ed.2d 1 (2008); ***Winter v. Natural Res. Def. Council, Inc.***, 555 U.S. 7, 77 USLW 4001 (2008).

Plaintiff articulates an impeccable career in law enforcement, without discipline, and compliance with defendants' policy that served to take his property, his firearms, without due process of law and refused him the ability to defend himself against likely perpetrators that follow law enforcement agents after a career, nearly four (4) decades, of protecting and serving the public. ***Amoco Production Co. v. Gambell***, 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987). Further, this Honorable Court can take judicial notice of the increase of violence, including "gun" violence, across New York State that makes it all the more important, not just for the plaintiff, but for the public, that trained, retired law enforcement be able to carry firearms lest irreparable injury occur because defendants' disarmed plaintiff. See ***Weinberger v. Romero–Barcelo***, 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982).

This Honorable Court should Order the immediate return of plaintiff's weapons and his firearm license for his safety and the safety of those around him, an honor earned after an unblemished career of public service. Plaintiff further seeks to enjoin the unconstitutional policy

of Defendants. "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." ***Romero-Barcelo***, 456 U.S., at 312, 102 S.Ct. 1798; see also ***Railroad Comm'n of Tex.* v. *Pullman Co.***, 312 U.S. 496, 500, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Defendants are tasked with enforcement of the law, the United States Constitution, and a federal monitor is appropriate under such circumstances should defendants, individually and collectively, work to disarm law abiding citizens, nevertheless former law enforcement, take their firearms without compensation or due process and refuse firearm licenses based upon associational punishment.

Plaintiff establishes that irreparable injury is *likely* in the absence of an injunction. ***Los Angeles* v. *Lyons***, 461 U.S. 95, 103, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); ***Granny Goose Foods, Inc.* v. *Teamsters***, 415 U.S. 423, 441, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974); ***O'Shea* v. *Littleton***, 414 U.S. 488, 502, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974).

In general, where a complaint alleges the denial of a constitutional right, irreparable harm will be presumed. ***Mitchell v. Cuomo***, 748 F.2d 804, 806 (2d Cir. 1984) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary"). That is certainly the case here, where the challenged policy is deprives plaintiffs of their rights under the Second, Fifth and Fourteenth Amendments of the U.S. Constitution. See ***Elrod v. Burns***, 427 U.S. 347, 373 (1976) (the deprivation of constitutional rights "for even minimal periods of time, unquestionably constitutes irreparable harm"); ***Connecticut Dept. of Environmental Protection v. O.S.H.A.***, 356 F.3d 226, 231 (2d Cir. 2004) ("[W]e have held that the alleged violation of a constitutional right triggers a finding of irreparable injury."); ***Statharos v. New York City Taxi & Limousine Comm'n***, 198 F.3d 317, 322 (2d Cir. 1999) ("Because plaintiffs allege deprivation of a constitutional right, no separate

showing of irreparable harm is necessary"); *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996)

(clarifying that "it is the alleged violation of a constitutional right that triggers a finding of

irreparable harm" and a substantial likelihood of success on the merits of a constitutional

violation is not necessary). Further, the stigma, loss of employment opportunity and collateral

consequences from the disarming of plaintiff are injuries that cannot adequately be recompensed

with monetary damages after the fact. *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d

70, 73 (2d Cir 1979) (an irreparable injury is suffered when monetary damages are difficult to

ascertain or are inadequate).

Defendants cannot articulate a basis to continue to enjoin constitutional protections from its

citizens, nevertheless former law enforcement, in simply defending themselves and their families

as noted by *New York State Rifle & Pistol Association Inc. v. Bruen*, 142 S.Ct. 2111 (2022),

"consistent with the approach used in *District of Columbia v. Heller,* 554 U.S. 570, 635

(2008) : (i) "[w]hen the Second Amendment's plain text covers an individual's conduct, the

Constitution presumptively protects that conduct"; and (ii) "[t]he government must then justify

its regulation by demonstrating that it is consistent with the nation's historical tradition of firearm

regulation." *Bruen*, 142 S. Ct. at 2129-30. defendants cannot justify a policy of disarming

Plaintiff and other similarly situated citizens based on association.

Where, as here, the government is the opposing party, the final two factors in the temporary

restraining order analysis – the balance of the harms and the public interest – merge. *Planned*

*Parenthood of New York City, Inc. v. U.S. Dep't of Health & Human Servs.*, 337 F. Supp. 3d

308, 343 (S.D.N.Y. 2018). As to the balance of harms, the likelihood of real and immediate

irreparable harm to plaintiff from the failure to grant him interim relief clearly outweighs the

likelihood of any harm to defendants from granting such relief. After all, "securing

14

[Constitutional] rights is in the public interest." *__New York Progress & Prot. PAC v. Walsh__*, 733 F.3d 483, 488 (2d Cir. 2013); *Coronel v. Decker*, 449 F. Supp. 3d 274, 287 (S.D.N.Y. 2020) ("[T]he public interest is best served by ensuring the constitutional rights of persons within the United States are upheld") (citation omitted). And, the risk to plaintiff and others' physical safety and welfare posed by disarming them in "places of worship and religious observation" in a climate of skyrocketing anti-Jewish attacks is a substantial harm against which defendants have no countervailing interest. *See, e.g., __Innovative Health Systems, Inc. v. City of White Plains__*, 117 F.3d 37, 43-44 (2d Cir. 1997) (finding irreparable harm where the government action would pose serious risk of harm to plaintiffs, including "death, illness or disability"); *__Shapiro v. Cadman Towers, Inc.__*, 51 F.3d 328, 332-33 (2d Cir. 1995) (upholding District Court's irreparable harm finding based on the "risk of injury, infection, and humiliation").

Defendants cannot show that enjoining this policy will adversely impact them at all – that former law enforcement be allowed to carry a firearm is in the public interest – and serves the stated basis for its decisions: Safety. First, "the Government does not have an interest in the enforcement of an unconstitutional law." *__Am. Civil Liberties Union v. Ashcroft__*, 322 F.3d 240, 247 (3d Cir. 2003). In the real world, policies such as the one at issue merely disarm law abiding citizens, while doing nothing to disarm those who have no regard for the law in the first place. Accordingly, the balance of harms and the public interest weigh in favor of granting plaintiff's motion for a temporary restraining order and preliminary injunction.

## CONCLUSION

Plaintiff respectfully prays that this Honorable Court issue an Order mandating that the Suffolk County Police Department reinstate the pistol license of the plaintiff; mandating that the Suffolk County Police Department Pistol License Section be ordered to return to the plaintiff all

his firearms seized by the Suffolk County Police Department; and further instruct defendants

turn over all written policies regarding suspension of pistol licenses, all documents related to this

case including notes, memoranda, text messages, e-mails, interoffice instant messages, letters,

investigative notes in "native format" as relevant to defendants' unconstitutional pattern and

practice of violating the constitutional rights of plaintiff and others similarly situated;

preliminarily appoint a federal monitor, issue further relief as to this court may seem just and

proper, together with all other relief that this Honorable Court deems just and appropriate given

the above circumstances inclusive of reasonable attorney's fees.

Plaintiff exhausted all available remedies for which he had to hire and undertake legal

costs of filing this suit. Reasonable attorney's fees should issue immediately as, in the context of,

Second Amendment Rights, three dissenting Supreme Court Justices, dissenting prior to its latest

decision where the same state defendants made another set of unconstitutional gun laws, opined

that:

> If a §1983 plaintiff achieves *any success on the merits,* even an award of nominal damages, the plaintiff is a prevailing party and is eligible for attorney's fees under 42 U. S. C. §1988. See ***Buckhannon Board & Care Home, Inc.* v. *West Virginia Dept. of Health and Human Resources***, 532 U. S. 598, 603 (2001). For this reason, were the Court to exercise jurisdiction in this case and rule for petitioners, they would be eligible for attorney's fees. See ***Farrar* v. *Hobby***, 506 U. S. 103, 109 (1992).

***New York State Rifle & Pistol Association, Inc. v. City of New York***, No. 18-280 (U.S. Apr. 27,

2020) (J. Alito dissenting).

Should Defendants decide to immediately return the firearms to plaintiff and reinstate his

firearms license, not only does such a claim survive but "[t]he burden of justification is

demanding and it rests entirely on the State," ***United States v. Virginia***, 518 U.S. 515, 533, 116

S.Ct. 2264, 135 L.Ed.2d 735 (1996), for which a federal monitor is still sought to enjoin further

violations of the New York State and United States Constitutions.

Dated: Central Islip, New York
  January 4, 2023

    Richard W. Young, Sr., Esq. (RWY 7633)
    Attorney for Plaintiff
    863 Islip Avenue
    Central Islip, N.Y. 11722
    (631) 224-7500

    Cory H. Morris, Esq. (CM5225)
    *Cocounsel for David Goldstein*
    135 Pinelawn Road, Suite 250s
    Melville NY 11747
    (631) 450-2515