**Richard W. Young, Sr., Esq.**
**863 Islip Avenue**
**Central Islip, New York 11722**
**(631) 224-7500**

March 27, 2023

Marc Lindemann
Deputy County Attorney
Suffolk County Department of Law
H. Lee Dennison Building
100 Veterans Memorial Highway
Hauppauge, New York 11788

Re: Goldstein v. Suffolk County et al.; Docket No: 2:23-cv-00051-JMA-LGD
<u>Settlement Demand (Made pursuant to FRE 408 and USDJ Dunst's Practice Rules)</u>;

Dear Mr. Lindemann:

I write in accordance with our previous discussions, the January 30, 2023, Order to Show Conference and the fact that plaintiff substantially prevailed in the return of all the weapons sought and his firearms carry license which required the filing of this lawsuit.

**PLAINTIFF DEMANDS $125,000.00 USD TO SETTLE ALL CLAIMS**

As of March 22, 2023, plaintiff's counsel Cory H. Morris has accrued approximately thirty-five (35) billable hours at the blended rate of $750.00 USD an hour, $26,250.00 and Richard W. Young has accrued approximately thirty-three (33) billable hours blended rate of $750.00 USD, $24,750.00 for which the $50,000.00 in attorney's fees was conveyed before United States District Court Judge Azrack during the January 30, 2023, teleconference.

The remainder of this non-negotiable settlement demand is to compensate plaintiff for the loss of work along with a de minimus amount for the constitutional injury he suffered. In

exchange, plaintiff will withdraw all claims, inclusive of the Monel claim which remains outstanding and for which plaintiff will seek a federal monitor to ensure compliance with the Second Amendment to the United States Constitution.

### Plaintiff Substantially Prevailed in obtaining the relief sought in the Litigation

In Hensley v. Eckerhart, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983), it was noted that the fee awards under 42 U.S.C. §1988 should be equivalent to fees in other types of equally complex Federal litigation and that such fees are awarded when one substantially prevails in litigation. See, e.g., Pietrangelo v. US Army, 568 F.3d 341 (2d Cir. 2009). The above attorney's fees are limited to the litigation and post litigation claims, cf. Ahmed v. Ciambra, No. 12-CV-3654 (JMA)(SIL) (E.D.N.Y. Jan. 17, 2023), and, among other things, must now account for the regular hourly billing rate, complexity (or novelty) of the litigation, rising inflation and other considerations as discussed by USMJ Vera Scanlon in Johnson v. City of NewYork, No. 16 Civ. 6426 (KAM)(VMS) (E.D.N.Y. Feb. 8, 2023). The $50,000.00 number will pale in comparison to the amount of fees accrued should this matter be heavily litigated.

### Plaintiff is entitled to Compensable Damages and Reasonable Attorney's Fees

The remainder of settlement amount and plaintiff's claims reside from the constitutional injury, see below, and the inability to maintain employment for various security jobs starting March, 2022, and continuing until the return of the weapons for which such jobs would range from $30/hour to $100/hour based on the unique skill set plaintiff obtained through decades of police training, notably, with one of the highest compensated law enforcement agencies: Suffolk County Police Department.

Estimating lost revenue at conservatively one thousand (1,000) hours of work for the 2022 year for which plaintiff was divested of his firearms, the following damages should be taken into consideration for your review in the settlement demand:

- 1,000 hours of work at the low rate of $30 an hour would be $30,000;

- 1,000 hours of work at a blended rate of $65 an hour would be $65,000; and

- 1,000 hours of work at the high rate of $100 an hour would be $100,000.

The above amount, together with the unique injury a former law enforcement suffers, a recognized constitutional injury, is compensable alone with or without physical injury. See Steve

Janoski, High school football coach fired for prayer wins $1.7M settlement, will get job back, NY Post (March 21, 2023), available at: https://nypost.com/2023/03/21/praying-football-coach-gets-job-back-1-7-million-settlement/; see also The Associated Press, $1.17M settlement approved in Alton Sterling protest lawsuit, ABC News (February 17, 2023); available at: https://abcnews.go.com/US/wireStory/117m-settlement-approved-alton-sterling-protest-lawsuit-97298162. That plaintiff's attorneys exercised billing discretion in litigating an novel issue, see below, and that plaintiff seeks nominal damages for such a violation is not to be discounted.

Plaintiff seeks modest damages for the constitutional violation suffered. For example, First Amendment violations have resulted in hundreds of thousands of dollars of damages without an injury. See News 4, Wildwood settles first amendment lawsuit for $295,000, KMOV St. Louis (last accessed on March 22, 2023); available at: https://www.youtube.com/watch?v=lm_vyCgwg8w (noting that there was no physical injury) see also Donners A., Wildwood Pays $295,000 in One of the Largest First Amendment Settlements in the Midwest, Donner Applewhite (March 4, 2021); available at https://da-lawfirm.com/wildwood-pays-295000-in-one-of-the-largest-first-amendment-settlements-in-the-midwest/.

Like the football coach that could not say a prayer, plaintiff merely seeks to be made whole, albeit if he was confronted with a life-threatening situation, he would not be able to defend himself or others because of defendant's collective actions.

### THE SECOND AMENDMENT INJURY IS SIGNIFICANT

On June 23, 2022, the United States Supreme Court held that N.Y. Penal Law §400.00(2)(f), which conditioned the issuance of an unrestricted license to carry a handgun in public on the existence of "proper cause," violated the Second and Fourteenth Amendments by impermissibly granting a licensing official the discretion to deny a license to a law-abiding, responsible New York State citizen based on a perceived lack of a special need for self-protection distinguishable from that of the general community. New York State Rifle & Pistol Association Inc. v. Bruen 142 S.Ct. 2111 (2022).

Immediately, Acting New York Governor Kathy Hochul stated "the Supreme Court is sending us backwards in our efforts to protect families and prevent gun violence," Tim Hains, Gov. Kathy Hochul Responds To Supreme Court Gun Ruling: New York "Fights Back, Real

Clear Politics (June 23, 2022), https://bit.ly/3TUv5W9, avowing to create legislation in response to the high court's "decision...[characterized as] isn't just reckless, it's reprehensible." Id. Perhaps most appalling is that she was "still digesting" and claimed "[w]e are reading the language as we speak..." yet repeated "[e]veryone wants a little bit of time to digest this, but I will say we are not powerless in this situation," before she concluded, however, Hochul said that she is "prepared to go back to muskets." Id. By creating unconstitutional laws, New York is on her way back to the SCOTUS. These cases cannot be considered novel as the United States Court of Appeals Second Circuit just received briefing and heard oral argument last week on what is likely going to be a major decision in this area of constitutional law.

The Second Amendment provides: "A well regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed." U.S. Const. amend. II. The Second and Fourteenth Amendments create a right that "is exercised individually and belongs to all Americans." District of Columbia v. Heller, 554 U.S. 570, 581 (2008). Law enforcement agents cannot be subject to the whim and caprice of a licensing officer.

This Second Amendment standard accords with how we protect other constitutional rights. Take, for instance, the freedom of speech in the First Amendment, to which Heller repeatedly compared the right to keep and bear arms. New York State Rifle & Pistol Association Inc. v. Bruen, 142 S.Ct. 2111 (2022) (citing Heller, 554 U.S., at 582, 595, 606, 618, 634-635). Like the injury to the First Amendment, the injury to the Second Amendment is not only compensable but carries with it the inability to exercise other constitutional amendments.

Plaintiff was allowed to carry a firearm and live a life fear of harm to self, family and others without fear of felony arrest for illegal gun possession. Together with this property right, this "natural right of resistance and self-preservation," 1 Sir William Blackstone, Commentaries on The Laws Of England 144 (1753), has been described as the "first law of nature" and "the true palladium of liberty." St. George Tucker, View of The Constitution of The United States with Selected Writings 238 (Clyde N. Wilson ed. 1999).

In District of Columbia v. Heller, 554 U.S. 570 (2008), the Court held that the Second Amendment right to keep and bear arms is a right held by private American citizens. Id. at 595. In McDonald v. City of Chicago, 561 U.S. 742 (2010) ("McDonald"), the Court held that the scope of that right applies to states and their political subdivisions, id. at 750, and that the contours of the right against the states are coextensive and coterminous with the contours a

citizen can assert against the federal government, id. at 778–80. While limitations and reasonable restrictions are recognized, see, e.g., New York State Rifle & Pistol Association, Inc. v. City of New York No. 18-280 (U.S. Apr. 27, 2020), the right is recognized and was violated here.

In dicta, the Heller Court stated that its opinion "should not be taken to cast doubt on longstanding ... laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." Id. at 626. The Supreme Court reiterated that view two years later in McDonald v. City of Chicago, 561 U.S. 742, 786 (2010) ("We made it clear in Heller that our holding did not cast doubt on such longstanding regulatory measures as ... laws forbidding the carrying of firearms in sensitive places such as schools and government buildings").

The Bruen Court explicitly rejected New York's formulation that "sensitive places" where the government may lawfully disarm law-abiding citizens include "all places where people typically congregate and where law-enforcement and other public-safety professionals are presumptively available." Bruen, 142 S. Ct. at 2133-34. The Supreme Court declared that "expanding the category of 'sensitive places' ... to all places of public congregation that are not isolated from law enforcement defines the category of 'sensitive places' far too broadly" and "eviscerate[s] the general right to publicly carry arms for self-defense." Id. at 2134.

Defendants cannot claim that this was a novel legal issue or that the amount of injury or attorney's fees are improper. For example, in response to the Bruen decision, the Governor of New York, Kathy Hochul, called a special session of the state legislature in order to enact a new statutory scheme to take the place of the regimen that Bruen struck down. The Concealed Carry Improvement Act, CCIA, imposes multiple new and blatantly unconstitutional impediments to New Yorkers in their attempt to exercise their constitutional right to armed self-defense outside the home. One of these impediments was that the CCIA replaced the "proper cause" standard with, among other things, an expansive list of "sensitive locations" where carrying and possessing firearms, which are defined to include "any pistol or revolver," is prohibited. See Penal Law § 265.00(3). That Suffolk County, New York, decided to implement its own unconstitutional scheme is of no consequence insofar as it is equally liable for the damages caused and, should this matter continue, the unconstitutional constraint on the right to defend oneself and others through legal firearms and firearms licensing.

In McDonald, this Court described the Second Amendment as a "'pre-existing right.'" Id. at 915. Heller too rejected the idea that the right "'is ... in any manner dependent on [the Bill of

Rights] for its existence.'" Heller at 592. In <u>McDonald v. City of Chicago</u>, four justices adopted the textual view that the Second Amendment applied to the states on the theory that it was incorporated into the Due Process Clause of the Fourteenth Amendment. However, Justice Thomas' concurrence presented a textualist position — that the Second Amendment is among the Privileges or Immunities guaranteed to Citizens against deprivation by States in the Fourteenth Amendment. See <u>McDonald</u> at 806 (Thomas, J., concurring).

The Second Amendment is not "subject to an entirely different body of rules than the other Bill of Rights guarantees that we have held to be incorporated into the Due Process Clause" <u>McDonald v. City of Chicago</u>, 561 U.S. 742, 780 (2010).Justice Thomas has observed that "[t]he right to keep and bear arms is apparently this Court's constitutional orphan. And the lower courts seem to have gotten the message." <u>Silvester v. Becerra</u>, 138 S. Ct. 945, 952 (2018) (Thomas, J., dissenting). Justice Thomas has charged that "the lower courts are resisting this Court's decisions in <u>Heller</u> and <u>McDonald</u> and are failing to protect the Second Amendment...." Id. at 950.

Relevant here is that in <u>Bruen</u>, the U.S. Supreme held that the "proper cause" standard under N.Y. Penal Law 400.00(2)(f) violated the Second and Fourteen Amendment rights of individuals who were denied concealed carry licenses in New York State for failing to meet that standard. The Court found that the "proper cause" standard, which bars individuals from obtaining concealed carry licenses unless they could demonstrate "a special need for self-protection distinguishable from that of the general community," id. at 2123, "prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." Id. at. 2156; see also id. at 2162 (Kavanaugh, J., concurring) ("As the Court explains, New York's outlier may-issue regime is constitutionally problematic because it grants open-ended discretion to licensing officials and authorizes licenses only for those applicants who can show some special need apart from self-defense"). As recognized by state Courts, "the [United States Supreme] Court held that the New York statute impermissibly infringed upon that constitutional guarantee because, unlike 43 other states, it required a showing of particularized need in order to obtain such a license, rendering the exercise of the right by ordinary citizens a near-impossibility." <u>People v. Rodriguez</u>, 2022 N.Y. Slip Op 22217 (NYC Sup. Ct. 2022).

That defendants decided to do this to a retire law enforcement officer, one with impeccable credentials as evidenced by having decades of employment with defendant Suffolk

County, exacerbates and highlights the unconstitutional policy employed by the defendants that will no doubt be borne out should this matter not resolve immediately.

## CONCLUSION

Plaintiff's demand is reasonable and heavily discounted to " secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Plaintiff, through counsel, has secured several other instances of defendants maintaining an unconstitutional policy for which this lawsuit is sought to address the same should this matter not settle immediately.

Very truly yours,

RICHARD YOUNG

CHM:ry